## BECKETT PAPER CO. v. HAMILTON & ROSSVILLE HYDRAULIC CO.

1. CORPORATION ORGANIZED UNDER ACT OF 1841 MAY MAKE PERPETUAL LEASES UNDER AUTHORITY OF ACT OF 1845.

    Under the act of March 12, 1845, whereby the provisions of the act of 1841, limiting the duration of a corporation, a hydraulic water power company, to thirty years were repealed, such corporation has the right to make perpetual leases of water power, although, under its original charter, its right to make such contracts was probably limited to the life of the corporation under the original act.

2. SUCH LEASES DO NOT, THEREFORE, BECOME LEASES FROM YEAR TO YEAR.

    Such a lease does not, therefore, in view of the act of 1845, become, beyond the period of thirty years, a lease from year to year or terminable at the will of the lessee or his assigns.

3. REMEDY IN LEASE, FOR BREACH THEREOF, CANNOT BE IGNORED AND FORFEITURE SOUGHT IN EQUITY.

    A perpetual lease of water power, stipulating that if lessor shall fail to use reasonable diligence to keep the canals, embankments, gates and other works necessary for their protection and security in good repair, so that the proper quantity of water shall be supplied, the lessor shall be liable for such damage, over and above rents to be deducted, as lessee shall sustain by reason of such negligence, or want of diligence, points out the remedy for a breach of such contract. And the lessee cannot ignore this remedy and resort to a court of equity to declare the lease forfeited, especially where it appears from the evidence that various claims by lessee, for failure to furnish power, have been presented and were compromised and adjusted between the parties.

4. SUCH LEASE CANNOT BE CANCELLED BY LESSEE, UNTIL LESSOR CANNOT OR WILL NOT COMPLY WITH CONTRACT.

    Such a lease, in which a remedy is provided for a breach of the contract upon the part of the lessor, cannot be cancelled until lessees have availed themselves of the remedy there provided, and have established their rights at law, and until it appears conclusively that lessor cannot or will not comply with the contract.

5. BREACHES OF SUCH CONTRACT WHICH DO NOT WARRANT FORFEITURE OR CANCELLATION.

    The fact that for quite a number of years immediately preceding action, the lessor, the hydraulic water power company, under the perpetual lease heretofore referred to, failed to furnish the stipulated amount of water power, to the substantial injury of lessee, and that there was a failure on the part of such company to keep its canals and other works in good repair, and free from obstructions, and that such company had entered into contracts with others to furnish water power, in the aggregate beyond its capacity, and to the injury of lessees, does not, in view of the remedy in damages provided by the lease, warrant a cancellation or forfeiture at the suit of the lessee.

6. LESSEE LIABLE SO LONG AS CONTRACT IS COMPLIED WITH.

    Where such contract or lease contains no stipulation as to how long the payments are to be made, but the lessor agrees to furnish the water power forever, the lessees are liable for the rental so long as the water is furnished and the contract complied with.

7. ASSIGNEE OF ORIGINAL LESSOR LIABLE WITHOUT PERSONAL AGREEMENT TO PAY.

    And although the lease contains no stipulation as to payment of rental by assignee of original lessee, there would seem to be, so long as the assignee of lessee is in possession, no question as to his liability for the rent accruing, and without a personal agreement on his part to pay the same.

8. Do Agreements to Pay Rent, Secured by Conveyance, Run with the Land?

Where the lease contains a conveyance of the land upon which the water power is to be used, to secure payment of the rent, it is a question whether this does not make the agreement to pay the rent one which runs with the land.

9. Original Lessees Liable for Rent After Assignment of Lease.

In any event, the original lessees having conveyed to the hydraulic company the fee ·simple of the land on which the water power is used, to secure payment of the rent, they are liable therefor, even after the assignment of their lease. The land was conveyed to their assignee subject to the lease, and there is no way in which the lien can be discharged except by payment, so long as the contract remains in force.

10. Costs—Case in which each Party Must Pay His Own.

In this case, in which plaintiff sought cancellation of a perpetual water power lease, which had been violated by lessor, but which contained a provision for damages or a remedy for such violation, and which lease the court sustained, it was directed that each party should pay his own costs.

Appeal from Court of Common Pleas of Butler county.

Smith, J.

This case and that of the Niles Tool Works v. Hydraulic Co. involve substantially the same questions, and were heard together. The petition in the first of the two cases avers that it is a corporation, and that the defendant is also a corporation. organized under the act of the general assembly passed March 25, 1841, and claims to possess and still exercises the privileges, franchises and powers conferred upon it by said act and an act amendatory thereto, passed March 12, 1845. That within a few years after its organization the said defendant constructed a hydraulic system consisting of the dam across the Miami river, reservoirs, canals, races and water ways, and has been supplying water power to various persons and corporations.

For a first cause of action the Beckett Paper Co. avers in substance that in 1848 one Calvin Riley entered into a certain indenture or contract in writing with the defendant company whereby said defendant, assuming the authority in law to do so, leased and let to said Riley, his heirs and assigns forever, water for twelve mill stone powers, being a flow of 260 384 cubic feet of water per minute to each mill stone power, amounting for the twelve mill stone powers to 3184.6 cubic feet of water per minute over a fall of thirteen feet to be used on lots Nos. 22 and 27 in the Hydraulic addition to the town of Hamilton, for which said Riley for himself consented and agreed to pay to said defendant or its assigns the yearly rent of $1,560, payable in semi-annual payments on the first day of January and July in each year.

That said indenture or written contract provided that it was made and executed upon certain conditions and covenants therein specified to be kept, observed and fulfilled by said parties, as follows:

"First—Said defendant bound and obligated itself forever to use proper care and diligence to keep the main canals, reservoirs and embankments and the dam over the Miami river at the head of the main canal, and necessary water way and gates and other works necessary for the protection and security of the main canals, embankments and reservoirs in good order and repair.

"Second—That said Riley, his heirs and assigns, were to construct and forever keep in repair the aqueduct and forebay conveying the water from the head race of the Hydraulic company to the wheels and works of

Riley, the tail race, the bridge over said aqueduct and a good substantial gate at the junction of the forebay and head race.

"Third—That said Riley, his heirs and assigns, were not to use more water than granted in said indenture, or permit water to be wasted for want of necessary repairs or by deficiency of forebay, gates, wheels or other works or machinery, or by suffering the gates to remain open when not using the water, or otherwise, and were not to obstruct the free flowing of water through the canals or reservoirs, the tumbles or races, or allow any offal or other material to pass or be thrown from their mills or works into any of the races of the company, or in any manner to interfere with or injure or destroy any of the gates, works or fixtures of the company."

That it was also provided in said indenture or written contract that the said defendant should have a lien on said real estate to secure to it the payment of said annual rental for water, and to secure the performance on the part of said Riley, his heirs, executors, administrators or assigns, of the covenants and stipulations specified on their part to be fulfilled and kept. That this indenture was on March 14, 1860, duly recorded in the mortgage records of Butler county, and appears of record as a lien on said real estate and a cloud upon the title thereof.

That this plaintiff is now, and has been ever since then, the owner and seized in fee simple of said real estate as the grantee of said Riley, and ever since and until January 1, 1896, the plaintiff has paid to said defendant and settled with it for said annual rental of $1,560.

But that the plaintiff never became a party to said indenture, and is not bound thereby.

That afterwards, on November 8, 1848, it was mutually agreed by and between said Hydraulic Co. and said Riley that the flow of water should be 276.928 cubic feet of water per minute for each mill stone power amounting in all to 3323 cubic feet for the twelve mill stone powers mentioned in said indenture, instead of the number of cubic feet therein stated, and that the same might be used on any lot adjoining said lots 22 and 27, and that any lot on which the water should be so used should be subject to the same lien provided in said lease on said lots 22 and 27, and thereupon copies of said indenture and subsequent agreement are attached to the petition. Then follows a second cause of action setting up a like contract made by the Hydraulic Co. with William Beckett, F. D. Rigdon and Adam Laurie, October 25, 1859, for leasing of water for five mill stone powers at a rental of $1,000 per year, payable semi-annually on the first day of January and July of each year.

The terms of this indenture are substantially similar to the others, and by it the lessee also conveys said lots 22 and 27 to the company with the condition of defeasance as appears in the other. It may be said here that both of these indentures were duly executed by the parties thereto as required by law of deeds conveying real estate.

Then follow other averments relating to both causes of action, to-wit:

"That under the original act incorporating the defendant company it was authorized and created for a limited number of years, to-wit, thirty years, and authorized to make leases or contracts with other parties for supplying them with water for a limited time, and that power to exist beyond said thirty years and to make leases or contracts for water power except for limited times was not conferred on said corporation by said amendment of March 12, 1845, or by any act of the general assembly,

and that said indenture contains no covenant or agreement whatever on part of assigns of Beckett and others to receive and pay for said water power, and that the same only amounts to a lease or tenancy from year to year. It also proceeds to allege that the defendant company has not fulfilled the covenants and obligations on its part in said indenture, but has broken the same in a good many ways, stating them—among others that it has not used proper care and diligence to keep the main canals, reservoirs, embankments and dam across the Miami river and the necessary water ways, gates and other works in good order and repair. That for many years it has misappropriated the revenues and income and squandered them to the neglect of its duties toward plaintiff and other grantees of water power, and has carelessly and negligently permitted and suffered the dam across the Miami river necessary for supplying water to fall into disrepair and become broken down and full of holes and leaks, so that it no longer supplies the water necessary to maintain said system of hydraulic power or afford the plaintiff the power contracted for in said lease. That about 1887 the defendant for pay caused to be driven a large number of piles in said canals, races and water ways and caused other obstructions to be placed therein so as greatly to impede the flow of the water and deprive plaintiff of water power contracted for. That it did not have a fall of thirteen feet as provided for. That by reason of said carelessness, negligence and failure the hydraulic system has fallen into disrepair, and plaintiff has been deprived of said power, and has been compelled at great expense to supply the power which the defendant company had contracted to furnish, and by reason thereof the payment by plaintiff of the rental has for many years been burdensome, inequitable and unjust and without any return to it or without any consideration therefor on the part of the defendant and that said indenture is a cloud on the plaintiff's title to said real estate.

"That by reason of the premises the plaintiff has a right to terminate said indenture or lease, and that it desires and has determined and decided so to do and that on January, 1896, the plaintiff duly notified the defendant that it elected and decided to put an end to said tenancy and that it would no longer receive or pay for any of said water power, and notified and requested defendant to cease to supply any water for power purposes to this plaintiff and to make demands upon it for said annual rental, and has notified and requested the defendant to cancel said indenture or written contract, which it refused to do, and wrongfully asserts that it has a right to continue perpetually said contract and exact and extort the payment of said annual rental.

"Whereupon it prays that the court will order and decree the relation of lessor and lessee between the defendant and the plaintiff to be at an end and by decree forever bar said defendant from exacting of the plaintiff said annual rental, and will order the cancellation of said contracts, and grant such other relief as the plaintiff may be entitled to.'"

By an amendment to the petition the plaintiff further avers that on the real estate described in the petition is a large and valuable paper mill and that the plaintiff has expended $100,000 or $150,000 in the construction and equipment thereof, relying upon the water power which defendant has agreed and by said indenture has contracted to furnish. That in the operation of said mills and in the manufacture of paper for which purpose the mills were erected, there was and is quite a high grade of power required, constant, continuous and reliable at all times, so that

the operation of manufacturing paper can be carried on with regularity without interruption and with expedition.

The plaintiff and its grantors have been deprived of said water power by said negligence and carelessness of defendant, and could not rely upon the same, and have been compelled to make other arrangements, and at great expense to them to put in steam boilers to generate power and operate said mills and carry on said manufacture with steam power, and in that way to supply the power which defendant had bound itself to supply.

It again alleges that no time was fixed by said contract, and, therefore, that it is a lessee or tenant at will or from year to year, and, therefore, is not bound to receive or pay for said water longer than it desires to and does receive it.

"That when said, lease was executed it was done in view of conditions then prevailing; that there was then abundance of water, and defendant then had large reservoirs and large quantities of water, and was able to furnish sufficient water power for operating the mills and factories supplied by it. But that for a number of years past the water in the river and under defendant's control has almost entirely failed, and defendant has no longer large reservoirs and large quantities of water, and is unable to furnish sufficient water and power for the purposes aforesaid, and that it was the intention of the parties and of the true construction of said indenture and written contract, that the same are leases from year to year and should not continue in force perpetually, but only for a reasonable time and during the existence of conditions prevailing at the time, and only while the said hydraulic system was adapted to answer the demands of manufacturing purposes.

"That since said defendant constructed its system it has been paid by its lessees and patrons large sums of money, so that it has been paid over and over again a fair and reasonable return upon its investment, and in addition thereto it has been paid over and over again the cost of its investment and the value of its property, and that it is inequitable and unjust for defendant longer to extort said rental.

"That there have been such changes in the business of manufacturing and in the machinery and mechanism necessary for carrying on that business, and in the demand for modern improvements and for a high grade of constant, well regulated, reliable and uninterrupted power for the purpose of operating paper mills and manufacturing paper, that defendant's hydraulic system has become obsolete and no longer supplies such constant, regular, reliable and efficient power, but is unreliable, detrimental and useless for such purpose. That consequently plaintiff cannot compete with others by the use of said system, and has been compelled to adopt steam boilers, engines and apparatus.

"That it was also the intention of the parties to said contract, and it is the true construction thereof, that the same are leases from year to year, not perpetual, but only for a reasonable time and until in the march of events there was a necessity for different power. That said annual rental is without consideration, and without advantage or value to the plaintiff, and if the same is continued as a fixed charge upon said real estate, it will be totally destructive of any and all value of said property, and be a confiscation of $100,000 or $150,000 in said paper mill property."

The defendant by its answer admits its corporate capacity as alleged, and the construction of its hydraulic system, and that it has since then

been engaged in furnishing water power as alleged. It further admits the making of the contract as therein stated, and that plaintiff is the owner of said lots 22 and 27, together with said lease and modification by written conveyance from said Riley. That Riley and his subsequent grantees, including plaintiff, have regularly paid the water rent as stipulated in the leases and in pursuance thereof, from the date of the original lease to January 5, 1896, and since commencement of this suit, have paid said water rent as therein provided to July 1, 1896, and have fully settled with defendant said annual rental after proper deductions in pursuance of the leases of said term for loss of water.

"Defendant denies that plaintiff never became a party to said indenture or the modification thereof, but avers that said Riley and all of its intermediate grantees have while owning the property been parties to said leases and used water under the same, and were bound by the stipulations therein contained, and that said lots 22 and 27 were bound for the payment of said rent, and that during all the time said leases and modifications were part and parcel of said real estate and appurtenant thereto, and passed to each one of the grantees, including the plaintiff, and each was bound by the terms of said water leases and accepted the deed with full knowledge of the same. That during all the time said water power has been used in propelling machinery on lots 22 and 27, said water rent was a lien thereon, and that defendant has always to the present time fully complied with all the stipulations above of said contract to be performed by it, and has made semi-annual settlements with said Riley and with said several grantees from time to time, including the plaintiff, up to July 1, 1896, and that said Riley and his said grantees, including the plaintiff, have during all that period fully acquiesced in the terms of said lease and modifications, and with the performance of the terms of said contract by defendant and has approved and ratified the same, and defendant says that it is still ready, willing and anxious to further comply with the terms of said lease and its ratification while the lease exists."

The answer then makes the same allegations and denials as to the second cause of action as to the lease to Beckett, Rigdon & Laurie, as applicable to both causes of action. The answer claims that by the amendatory act of March 12, 1845, the legislature repealed so much of the former act as limited the duration of the company, and conferred upon it full power to make permanent leases of water, and such leases as were made to plaintiff's grantors. It denies the allegation that the assigns of the original lessees were not by said agreement bound to receive and pay for the water power, and that they were only lessees from year to year. It avers that said original lessees and all of their assigns and said real estate, fixtures and appurtenances were bound by the leases of said lessees and to pay the rent therefor so long as the defendant complied substantially with the terms of said leases, which it avers it has done.

It denies all the allegations as to carelessness and negligence, and avers that it has fully complied with its obligation. It admits the notice to the company that plaintiff has elected to terminate the contracts, and that it refuses to comply with plaintiff's request. Defendant further avers that plaintiff and each of its grantees have at all times acquiesced in the performance by defendants of the terms of said leases, and have approved and ratified the action of the defendant and the terms and conditions and binding force of the said leases. That it has expended many

hundred thousand dollars in making and keeping up said hydraulic system, to the full knowledge of plaintiff and its grantors, and if the relief asked for is granted, that it will amount to the absolute destruction of the system, which is of the value of more than $150,000.

The new matter in the answer is denied by the reply.

On the issues thus presented we heard a great deal of testimony, and we state the conclusions at which we have arrived as briefly as possible.

First—We are of the opinion that the evidence clearly establishes the fact that for quite a number of years immediately prior to 1896 there was a failure on part of the defendant, the Hydraulic company, to furnish to the plaintiff the stipulated amount of water power in the manner pointed out in the several contracts, and this to the substantial injury of the plaintiff. That there has been a failure on part of the defendant to keep its canals and other works in good order and repair, and particularly that the large reservoir, used originally for the storage of water, has been allowed to fill up with earth, mud, etc., so that the hydraulic system is not so good in this respect as it was when the contract was entered into. But it seems to us that the great objection to the contract of the defendant is that it has leased and agreed to furnish a much greater amount of water power than it is able to furnish, and that many of the contracts made by it to furnish power were entered into long after those made with the plaintiff, and the consequence has been that in attempting to supply all the water power contracted for, they have failed to comply with the agreement under which the plaintiff claims. The consequence has been that for a considerable part of the time the power stipulated for has not been furnished as it should have been; that the supply varied greatly from time to time, even on the same day; that it was frequently the case that in the early morning when a head of water had accumulated during the night (when the various mills were not running) in the dams and storage reservoirs, the mills of the plaintiff would start with the stipulated power agreed to be furnished, but as this head of water decreased by the use of it by the various mills using the same, less and less power would be furnished to plaintiff, and much less than the quantity agreed to be furnished under the leases. Necessarily this was very much to the injury of the plaintiff. Its plant was a very large one, requiring for its successful operation more power than the defendant had bound itself to furnish to it, and, therefore, they had been compelled to supplement the water power with steam power, and the effort was made to use them together, but owing to the fact that for the reasons indicated the quantity of water power furnished by the defendant company was so irregular and for so much of the time was less than the amount stipulated to be furnished, the steam and water power did not work well together, and, according to the weight of the evidence, very considerable injury to the interests of the plaintiff continually resulted.

But it is clear under those contracts that it was the bounden duty of the defendant to the plaintiff to furnish the stipulated water power regularly and constantly, and not in the varying and irregular manner described, and we have no question but that it is shown by the evidence that there has been for years past a substantial breach of the contract in the particulars mentioned, on the part of the defendant company, to the substantial prejudice of the plaintiff.

The question then arises (and it is one not free from doubt): What is the result of this—does it give to the plaintiff the right to repudiate the contract entirely, and call·upon a court of equity to cancel and annul the contract under which the parties have so long operated, and wholly release them from their obligations under the same? Properly to determine this question it is necessary that we should examine the provisions of the contracts themselves and some provisions therein which were not mentioned in the pleadings of the parties, though the contracts themselves were referred to, and attached to the petition, and the originals offered in evidence.

As has been stated, those indentures, contracts or leases are in substance the same, and I quote some portions from one of them in substance:

In subdivision 1 of the contract specifying and setting out what the Hydraulic company shall do, it is provided that

"Said company and their heirs and assigns shall forever keep the main canal, reservoirs and embankments and the dam over the Miami river at the head of the main canal, and the necesary water ways and gates, and such other works as are necessary for the protection and security of the main canal, embankments and reservoirs, in good order and repair."

Second—"If the said company shall not keep the main canal, embankments, gates and other works necessary for their protection and security in good repair, and the proper quantity of water shall not be furnished to said Calvin Riley, his heirs or assigns, as hereinbefore provided, for more than ten days in any one year, by which he shall suffer loss and damage, a deduction shall be made from the rent to be paid by him as aforesaid for the time over and above ten days during which said company shall not supply the proper quantity of water according to their contract as aforesaid, but no deduction shall be made if the time during which the water shall not be supplied as aforesaid shall not exceed ten days in any one year—said company expressly reserving ten days of each and every year for the purpose of drawing off the water, should they deem it necessary, and making additions and repairs, for which time no deduction is to be made from the rents as aforesaid; but if the said company shall not use reasonable diligence to keep their main canal, embankments, gates and other works necessary for their protection and security in good repair, so that the proper quantity of water shall not be supplied to Calvin Riley, his heirs and assigns, as hereinbefore provided, the said company shall be liable for such damage over and above the rents to be deducted, as said Riley, his heirs or assigns shall sustain by reason of such negligence and want of reasonable diligence."

Does not this provision of the contract between the parties clearly and explicitly point out the remedy given to Riley, his heirs and assigns (and, therefore, to the plaintiff), in case of a breach of the contract on the part of the defendant company on failure to furnish the water power which it has stipulated to furnish?

It seems to us that such is the case, viz.: That defendant has no right to collect the stipulated rent for the time over ten days in any one year that the Hydraulic company has failed to supply the water, as contracted for, and that in addition to this, that if such failure is occasioned by the want of reasonable diligence in the maintenance of the system (which is the allegation made against the defendant here), then

Paper Co. v. Hydraulic Co.

it is to be liable for all damage occurring to said Riley, his heirs or assigns, by reason thereof.

How, then, can the plaintiff without a resort to the remedy expressly given to them by the contract itself, ignore this right and resort to a court of equity and call upon it to declare the contract or lease forfeited, when a legal right is given to it by the contract itself by proper proceedings to obtain equitable redress for this breach of the contract by the defendant company? And especially is this so in view of the fact, which is abundantly established by the evidence, that various claims on the part of said lessees against the Hydraulic company for failure to furnish them power in accordance with said contracts have been presented and allowed, and that all of said claims up to January 1, 1896, have been fully compromised and adjusted by the parties themselves.

We are of the opinion that this cannot be done, and for the additional reason that, as held by this court in the case of Adams v. Parnell, 5 Circ. Dec. 190, a court of equity will not enforce forfeitures unless under very peculiar circumstances.

Second—We are further of the opinion that the claim of the plaintiff that the leases in question are void and not binding upon them for the reason that the charter of the Hydraulic company did not give to such company the right to make permanent leases of this character, is not well founded. It is true, that by the original charter, passed March 25, 1841, the life of the corporation was limited to thirty years, and the company had the right to lease water power "for a limited time," probably not longer than the life of the corporation. But by the amendment of March 12, 1845, the provisions limiting the duration of the company to thirty years and restraining the company from making permanent leases were repealed. And we think that thereafter the company had the right to make leases like those in controversy.

Third—A considerable portion of the argument in this case has been directed to the question whether on the provisions of these indentures, contracts or leases, there is any liability whatever on the part of the plaintiff as assignee of the original contracts made with Riley, and with Beckett, Rigdon & Laurie for the payment of the rent stipulated to be paid by those to whom the leases were originally made. Such liability on the part of the assignees is denied by the counsel for plaintiff, the claim being that nowhere in these contracts is there any stipulation that in case of the assignment of a lease the assignee is to be bound to pay the same, but only the original lessee, and such does seem to be the language of the agreement. For while they expressly stipulate that the water power agreed upon shall be furnished to said original lessees, their heirs and assigns, forever, said original lessee simply stipulates and agrees to pay to the Hydraulic company or its assigns the yearly rent therefor in the manner provided for, and we are of the opinion that by the terms of this contract, though no statement is made therein as to how long these payments were to be made, that it was to be for so long as the water was furnished and the contract complied with, which the company obligates itself to do forever. There being then no express stipulation that the assignee of the lease should pay such rent, is there any personal liability on him to do so? So long as an assignee of the lease continues in the possession of the demised property, under the decision in Sutliff v. Atwood, 15 O. S., 186, there would seem to be no question as to his personal liability for the rent accruing while thus in

his possession and occupancy, and without any personal agreement on his part to pay the same, and the assignor is also secondarily liable therefor, and the question might arise in this case whether the plaintiffs. were not still in possession of the property so as to render them personally liable therefor, for they are in possession of and claim the title to, the real estate on which the water power is to be used. And it is also a question, in view of the conveyance of this land by the original lessees to the Hydraulic company to secure the payment of the rent, whether this does not make the agreement to pay the rent one which runs with the land.

But in view of the provision to which we have referred, viz.: that in this indenture, and by express terms there is a conveyance by the original lessees to the Hydraulic company of the fee simple of the land now owned by plaintiffs and on which the water power is to be used, to secure the payment of the rent which may become due, it seems to us that the question referred to is not of any great importance in the determination of this cause. Riley as the original lessee in the one case and Beckett, Rigdon & Laurie in the other, were in our judgment liable for the payment of this water rent, even after the assignment by them of their leases to the plaintiff. They gave a mortgage on the land to secure this rent—the land was conveyed to the plaintiff subject to said lease, and we see no way in which the lien can be discharged except by payment, so long as the contract remains in force.

We would not be understood as holding that there might not be such a violation and breach of this contract on the part of the Hydraulic company as would justify a court in holding that the contract should be cancelled and held for naught—we think this might be done. All that we now decide on this point is that no facts are shown which would justify such action now. That by the contract itself a remedy is given to the plaintiff for the breach thereof on the part of the Hydraulic company and until the plaintiffs have availed themselves of the remedy thus provided and established their rights at law, and it appears conclusively that the defendant cannot or will not comply with the provisions of the contract, the relief now sought must be denied. The petitions, therefore, will be dismissed, but under all the circumstances we think each of the parties must pay his own costs.

*Morey, Andrews & Morey,* for plaintiffs.

*Millikin, Shotts & Millikin* and *Mr. Petticord,* for Hydraulic Co.